IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-294-D

| | | |
|---|---|---|
| WESTERN PLASTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DUBOSE STRAPPING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On July 2, 2015, Western Plastics, Inc., ("WP" or "plaintiff") filed this action against DuBose Strapping, Inc., ("DuBose" or "defendant") alleging patent infringement [D.E. 1]. On September 8, 2017, DuBose moved for partial summary judgment [D.E. 49]. On October 9, 2017, WP moved for partial summary judgment on some of DuBose's defenses [D.E. 97]. As explained below, the court denies DuBose's motion for partial summary judgment, and grants in part and denies in part WP's motion for partial summary judgment.

I.

WP owns United States Patent No. 8,080,304 ("the '304 Patent"). Compl. [D.E. 1] ¶¶ 8–9. The '304 Patent, entitled "Multi-Layer Wrap," covers "a stretchable multi-layer metal coil wrap product" that WP sells commercially as Panacea Wrap ("Panacea"). Id. ¶¶ 8–11. In essence, Panacea consists of two thin plastic films that cling to each other with a mesh layer in between to restrict stretching and increase the durability of the wrap material. See [D.E. 52-1] 23; [D.E. 51] ¶ 14; [D.E. 1-1]. Customers use the product to wrap large rolls of metal coil produced in the metal industry in preparation for transportation. See Compl. ¶ 12; [D.E. 51] ¶¶ 5–9. WP first sold Panacea during the first quarter of 2006. [D.E. 99] ¶ 64.

Thomas Clarke is the President of WP and is the sole inventor listed on the '304 Patent. [D.E. 99] ¶ 1. Clarke allegedly envisioned the idea for Panacea in 2005 following discussions with Globopro, [D.E. 99] ¶¶ 70–72, and he filed patent applications in Canada (on February 1, 2006) and the United States (on February 5, 2006). See [D.E. 52-1] 10; [D.E. 51] ¶¶ 10–11. On December 20, 2011, the '304 Patent was granted. Compl. ¶ 8. The United States Patent and Trademark Office considered thirty-six cited references and issued six Office Actions before granting the patent [D.E. 99] ¶¶ 27–28; see [D.E. 51] ¶¶ 79–147. The Patent Office also considered U.S. Patent No. 6,942,909 ("the Shirrell or '909 Patent") and U.K. Patent No. 2,348,633 ("the Orpen Patent") when evaluating the '304 Patent. See [D.E. 99] ¶ 30.[1]

The '909 Patent is critical for both parties in this case. Jack Shirrell was the Vice President of Film Technology at Illinois Tool Works-Muller ("ITW-Muller") when the '909 Patent was granted on September 13, 2005. See [D.E. 99] ¶ 5; [D.E. 100-20]. Jeff Kellermann was the President of the Metals Group of Illinois Tool Works Fleetwood-Signode ("ITW-Fleetwood"), and the Shirrell Patent lists Kellermann as a co-inventor. See [D.E. 99] ¶ 4; [D.E. 100-20]. While working at ITW-Fleetwood, Kellermann was a customer of WP and purchased Panacea for resale [D.E. 99] ¶ 17. In January 2003, Shirrell filed for the '909 Patent and developed a prototype wrap product at a WP facility. See [D.E. 51] ¶¶ 51–55; [D.E. 99] ¶¶ 41–44. The parties dispute whether Shirrell's prototype product was ever commercially developed or sold as a product called "5G" or "5GF TamaNet." Compare [D.E. 51] ¶¶ 55–60, with [D.E. 99] ¶¶ 54–63. The parties also dispute whether the prototype is the same design as disclosed in the '909 Patent. See [D.E. 127] 6.

---

[1] Clarke distinguished the Orpen Patent by arguing that the Orpen Patent covered a wrap comprised of two plastic plies fused together with a mesh layer in between. See [D.E. 99] ¶¶ 31–34. Clarke distinguished the Shirrell Patent by arguing that the Shirrell product was designed to stretch significantly, while Panacea was designed to not stretch very much. Clarke also noted that the Shirrell product was not commercially successful. See id. ¶¶ 35–39.

Kellermann is now DuBose's Chief Operating Officer. [D.E. 99] ¶ 3. In 2014, Kellermann began exploring options for using the Shirrell prototype to create a product to compete with Panacea. [D.E. 51] ¶¶ 152–53. DuBose was aware of the '304 Patent and sought legal advice before introducing a competing product. [D.E. 51] ¶¶ 154–60. In 2015, DuBose introduced "FlexStretch," a metal coil wrap comprised of "bale netting laminated in between layers of stretch film." [D.E. 51] ¶ 160; see Compl. ¶ 10.

On July 2, 2015, WP filed a complaint against DuBose alleging direct and induced patent infringement in violation of 35 U.S.C. §§ 271(a)–(b) based on the sale of FlexStretch. See Compl. 1, 4–7; [D.E. 66] (dismissing induced infringement claim). DuBose answered on August 24, 2015, and filed four counterclaims against WP for: (1) noninfringement, (2) patent invalidity under 35 U.S.C. §§ 101–03, (3) inequitable conduct rendering the patent unenforceable, and (4) patent invalidity for improper inventorship. See [D.E. 14]; cf. [D.E. 66] (conceding infringement). On September 17, 2015, WP replied. [D.E. 16]. DuBose has since stipulated that FlexStretch infringes WP's '304 Patent. See [D.E. 66].

On October 12, 2015, the parties filed a joint discovery plan. [D.E. 18]. After a series of motions to amend, the court filed an amended scheduling order. [D.E. 30]. Under the final scheduling order, expert reports were due on October 25, 2016 (if party had burden of proof on issue) or November 23, 2016 (if party did not have burden of proof on issue). Id. The court set the close of discovery for May 9, 2017. [D.E. 33].

On May 31, 2017, the court held a Markman hearing. [D.E. 39]. The court construed four claim terms. [D.E. 42]. On the same day, the court ordered the parties to attend a settlement conference. [D.E. 43]. On July 11, 2017, the parties attended a settlement conference with Magistrate Judge Gates. See [D.E. 46, 47].

On September 8, 2017, DuBose moved for partial summary judgment, [D.E. 49], and filed a memorandum in support [D.E. 50], a statement of material facts [D.E. 51], and an appendix to the

3

statement of material facts [D.E. 52]. DuBose sought summary judgment on its claims that either WP's patent was unenforceable or invalid [D.E. 49] 1. Alternatively, DuBose sought partial summary judgment on WP's claim for recovery of lost profits and WP's claim that DuBose willfully infringed WP's patent. Id. DuBose also filed two motions in limine and supporting memoranda to exclude and limit testimony from Robert Stoll and Christopher Schulte [D.E. 55, 56, 57, 58].

On October 9, 2017, WP moved for partial summary judgment concerning various defenses of DuBose [D.E. 97], and filed a memorandum in support [D.E. 98], a statement of material facts [D.E. 99], and an appendix to the statement of material facts [D.E. 100]. WP previously had filed motions in limine to exclude DuBose's expert witness Art MacCord [D.E. 61, 65] and to dismiss DuBose's invalidity claim [D.E. 60]. On September 10, 2017, WP also filed a motion entering a stipulation that DuBose had infringed WP's patent and dismissing WP's claim for induced infringement [D.E. 66].

On October 30, 2017, WP opposed DuBose's motion for summary judgment [D.E. 108] and filed a statement of material facts [D.E. 109, 115]. On the same day, DuBose opposed WP's motion for summary judgment [D.E. 110] and filed a statement of material facts [D.E. 111, 112]. Also on October 30, 2017, DuBose moved to strike, in part, the testimony of Dr. Robert Kimmel [D.E. 117] and filed a memorandum in support [D.E. 118]. On November 13, 2017, WP responded in opposition [D.E. 128]. On November 27, 2017, DuBose replied [D.E. 133].

On November 16, 2017, WP moved to strike from evidence Exhibit 36, [D.E. 52-39], a copy of U.S. Patent No. 5,104,714 ("the '714 Patent") [D.E. 131] and filed a memorandum in support [D.E. 132]. On November 30, 2017, DuBose responded in opposition [D.E. 134]. On December 12, 2017, WP replied [D.E. 135].

On June 29, 2018, the parties filed a joint statement on the status of the case [D.E. 138]. The parties listed as outstanding the following motions: (1) DuBose's motion for partial summary judgment [D.E. 49], (2) DuBose's motion in limine to exclude Schulte [D.E. 57], (3) WP's motion

for partial summary judgment [D.E. 97], (4) DuBose's motion to strike Kimmel declaration [D.E. 117], and (5) WP's motion to strike the '714 Patent from evidence [D.E. 131].

II.

DuBose seeks to exclude WP's expert Christopher Schulte from testifying about damages. Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. Fed. R. Evid. 702; see Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 6748518, at *5 (E.D.N.C. Dec. 22, 2011) (unpublished). The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. See Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court has broad latitude in determining the admissibility of proposed expert testimony. See United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994).

Expert testimony is appropriate when it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A district court may permit a witness qualified as an expert to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case." Id. Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must perform the special gatekeeping obligation of ensuring that expert testimony meets both requirements. Kumho Tire, 526 U.S. at 147.

"In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). When proposed expert testimony pertains to damages, the testimony should be excluded when it "consists of an array

5

of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it." Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 145 (4th Cir. 1994) (quotation omitted); see Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (per curiam) ("Where lost future earnings are at issue, an expert's testimony should be excluded . . . if it is based on unrealistic assumptions regarding plaintiff's future . . . prospects."); Silicon Knights, Inc., 2011 WL 6748518, at *7–12.

"To recover lost profits damages for patent infringement, the patent owner must show that it would have received the additional profits 'but for' the infringement." King Instruments Corp. v. Perego, 65 F.3d 941, 952 (Fed. Cir. 1995). One method for showing but for causation is the Panduit test. See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978). Under the Panduit test, a patentee is entitled to lost profit damages if it can establish four elements: "(1) demand for the patented product, (2) absence of acceptable non-infringing alternatives, (3) [] manufacturing and marketing capability to exploit the demand, and (4) the amount of profit [it] would have made." Id.; see Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1285–86 (Fed. Cir. 2017). Damages under Panduit are not easy to prove. See Mentor Graphics Corp., 851 F.3d at 1285 (collecting cases).

"The second factor, absence of acceptable non-infringing alternatives, often proves the most difficult obstacle for patent holders. Under this factor, if there is a non-infringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." Id. at 1286. This determination is made on a customer-by-customer basis. Id.

Schulte's expert report addresses the four Panduit factors. See [D.E. 54-6]; [D.E. 106-1]. DuBose disputes Schulte's opinion that no non-infringing alternative existed. See [D.E. 58] 6–7. DuBose's argument does not address the relevance or reliability of Schulte's testimony, but rather the weight and credibility of Schulte's opinion. Accordingly, the court denies Dubose's motion to

exclude Schulte. See <u>Presidio Components, Inc. v. Am. Tech. Ceramics Corp.</u>, No. 14-CV-2061-H, 2016 WL 10933024, at *5 (S.D. Cal. Mar. 25, 2016) (unpublished); <u>Roll-Rite, LLC v. Shur-Co, LLC</u>, No. 12-CV-11150, 2014 WL 2217014, at *6 (E.D. Mich. May 29, 2014) (unpublished) ("[W]ith respect to [expert's] analysis of the <u>Panduit</u> factors, [defendant] challenges [expert's] conclusions, not his methodology. However, <u>Daubert</u> governs the admissibility of expert testimony only when a party challenges an expert's methodologies—not when the party challenges an expert's substantive conclusions."); <u>Douglas Dynamics, LLC v. Buyers Prods. Co.</u>, No. 09-CV-261-WMC, 2014 WL 1350720, at *9 (W.D. Wis. Apr. 4, 2014) (unpublished).

III.

A.

DuBose moves to strike a portion of Dr. Kimmel's amended expert report. <u>See</u> [D.E. 117]. WP filed the amended expert report with its motion for summary judgment. <u>See</u> [D.E. 100-10]. WP responds that Dr. Kimmel's amended expert report merely summarizes Dr. Kimmel's deposition. <u>See</u> [D.E. 128] 5.

Under Rule 26(a)(2), parties are required to disclose the identities of expert witnesses and the experts must provide a written report. <u>See</u> Fed. R. Civ. P. 26(a)(2)(A)–(B). Under Rule 26(e)(2), parties have a continuing obligation to supplement their expert disclosures. <u>See</u> Fed. R. Civ. P. 26(e)(2). "Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment." <u>OmniSource Corp. v. Heat Wave Metal Processing, Inc.</u>, No. 5:13-CV-772-D, 2015 WL 3452918, at *9 (E.D.N.C. May 29, 2015) (unpublished); <u>Gallagher v. S. Source Packaging, LLC</u>, 568 F. Supp. 2d 624, 630 (E.D.N.C. 2008); see <u>Beller ex rel. Beller v. United States</u>, 221 F.R.D. 696, 701 (D.N.M. 2003) ("[Rule 26(e)] does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness report . . . ." (quotation omitted)); <u>Coles v. Perry</u>, 217 F.R.D. 1, 3 (D.D.C. 2003) ("[Rule] 26(e) does not grant a license to supplement

a previously filed expert report because a party wants to . . . ."). Courts distinguish "true supplementation" from gamesmanship. See Gallagher, 568 F. Supp. 2d at 631. Otherwise, "there would be no finality to expert reports" and "each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." Beller, 221 F.R.D. at 701.

"If a party fails to [timely] provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A district court has broad discretion to evaluate whether a failure to disclose was substantially justified or harmless. See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). In making this determination, the court should consider five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Id.

In its invalidity contentions submitted in December 2015, DuBose argued that WP's patent claims "are invalid because they are not enabled by the written description." [D.E. 118] 2. Dr. Kimmel produced two expert reports during discovery. See [D.E. 44-3] 2. His first report was dated October 25, 2016, and his second report was dated December 8, 2016. Id. Expert reports were due on November 23, 2016, and discovery closed on May 9, 2017. [D.E. 30]; [D.E. 33]. On May 23, 2017, Dr. Kimmel prepared a report to supplement his previous expert reports. See [D.E. 44-3]. On May 24, 2017, Dr. Kimmel was deposed. See [D.E. 52-5]; [D.E. 71-9]. Although Dr. Kimmel had not previously offered an opinion on the issue of enablement, DuBose questioned Dr. Kimmel on the issue. See [D.E. 128] 4–5. On September 10, 2017, as part of its motion for summary judgment [D.E. 97], WP filed an amended report from Dr. Kimmel that expressly addressed the issue of enablement. See [D.E. 100-10]. WP argues that this amended report merely "re-states [Dr.

8

Kimmel's] deposition testimony" and should be considered. See [D.E. 128] 5.

Dr. Kimmel's report contains new information, and WP submitted it four months after discovery concluded and eleven months after expert reports were due. Although WP did not produce the amended expert report to "stave off summary judgment," Gallagher, 568 F. Supp. 2d at 632, WP provides insufficient justification for Dr. Kimmel's failure to address the enablement defense in his initial report. See [D.E. 128]. Because discovery ended four months before WP produced amended expert report, DuBose did not have an opportunity to conduct discovery or address the new expert opinion. See [D.E. 118] 4. Accordingly, the court grants DuBose's motion to strike the portion of Dr. Kimmel's amended expert report concerning enablement. See Williams v. TESCO Servs., Inc., 719 F.3d 968, 975–76 (8th Cir. 2013); Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co., No. 13-CV-4106-CJW, 2017 WL 632105, at *4–7 (N.D. Iowa Feb. 13, 2017) (unpublished); Beach Mart, Inc. v. L & L Wings, Inc., No. 2:11-CV-44-F, 2016 WL 347398, at *3 (E.D.N.C. Jan. 27, 2016) (unpublished); Hill ex rel. Hill v. Koppers, Inc., No. 3:03CV60-P-D, 2009 WL 4908836, at *6 (N.D. Miss. Dec. 11, 2009) (unpublished); Gallagher, 568 F. Supp. 2d at 632.

B.

WP moves to strike any reference to the '714 Patent. Under Local Patent Rule 303.3, a party opposing a claim of patent infringement must serve on all parties its preliminary non-infringement contentions. As part of the party's non-infringement contentions, the party must identify:

[E]ach item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. . . . Prior art with respect to an item offered for sale or publicly used or known shall specify the date and nation in which the offer or use took place . . . .

Local Patent R. 303.3(a)(2). The rule distinguishes between patents as prior art and products offered for sale as prior art. An analogous rule exists for final invalidity contentions. See Local Patent R. 303.6. A court may permit an amendment to a party's final invalidity contentions upon a showing of good cause. See Local Patent R. 303.7(a). Local Patent Rule 303.7(b) provides a non-exhaustive

9

list of examples. See Local Patent R. 303.7(b).

The court's local rules exist alongside 35 U.S.C. § 282. Section 282(c) provides:

> In an action involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Federal Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

35 U.S.C. § 282(c). Although section 282(c) provides a default rule, "when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial." ATD Corp. v. Lydall, Inc., 159 F.3d 534, 551 (Fed. Cir. 1998); see Abbott Labs. v. Syntron Bioresearch, Inc., No. 98-CV-2359, 2001 WL 34082555, at *2 (S.D. Cal. Aug. 24, 2001) (unpublished); cf. Hollingsworth v. Perry, 558 U.S. 183, 191 (2010) (the local rules of a United States District Court "have the force of law"). Section 282(c) "prevent[s] unfair and prejudicial surprise by the production of unexpected and unprepared-for prior art references at trial." Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874, 879 (Fed. Cir. 1986). "[M]erely mentioning a prior patent or publication in a pre-trial paper, and neglecting to indicate that it will be used at trial, does not normally constitute adequate notice." Id.

DuBose refers to a stretchable netting product called "TamaNet." See [D.E. 14]. Shirrell used TamaNet in preparing the "5GF TamaNet" prototype that may have inspired the '909 Shirrell Patent. See id.; [D.E. 14-1]. DuBose refers to TamaNet by name in its final non-infringement/invalidity contentions and included a picture of TamaNet in its final invalidity contentions. See [D.E. 132-2] 10. DuBose, however, did not refer to the patent underlying TamaNet, U.S. Patent No. 5,104,714, until filing its motion for partial summary judgment on

10

September 8, 2017 [D.E. 50].

DuBose concedes that it did not refer to the '714 Patent before the close of discovery. See [D.E. 134] 3. Instead, DuBose argues that it timely disclosed the prior art and that WP denied DuBose's request to admit in bad faith. See id. at 3. Moreover, DuBose contends that it repeatedly referred to the TamaNet product by name and with pictures. See id. at 1–3.

DuBose only disclosed its intent to use the '714 Patent on September 8, 2017, as part of its motion for partial summary judgment. DuBose made the disclosure months after the close of discovery. See [D.E. 50]. DuBose has not shown good cause for the late disclosure of the '714 Patent. Thus, the court grants WP's motion to strike any reference to the '714 Patent. See, e.g., Abbott Labs., 2001 WL 34082555, at *2–3.

IV.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Summary judgment may be properly granted in patent cases. See Cont'l Can Co. USA v.

11

Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991). Because patents are presumed valid, the party asserting invalidity has the burden to show that the patent is invalid by clear and convincing evidence. See Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011).

An alleged inventor's oral testimony on the issue of patent invalidity must be corroborated. See Woodland Tr. v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371 (Fed. Cir. 1998); Carella v. Starlight Archery & Pro Line Co., 804 F.2d 135, 138 (Fed. Cir. 1986); Netscape Commc'ns Corp. v. ValueClick, Inc., 704 F. Supp. 2d 544, 554 (E.D. Va. 2010). When an alleged inventor asserting priority over a patentee's rights presents oral testimony, courts use a rule of reason approach "whereby all pertinent evidence is examined in order to determine whether the inventor's story is credible." Fleming v. Escort Inc., 774 F.3d 1371, 1376–77 (Fed. Cir. 2014) (quotation omitted); see Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350 (Fed. Cir. 2001); Woodland Tr., 148 F.3d at 1371. The sufficiency of the corroborating evidence is treated as a question of fact. Fleming, 774 F.3d at 1377; Sandt, 264 F.3d at 1350–51 (listing factors). In some cases, "non-documentary, circumstantial evidence may sufficiently corroborate" the alleged inventor's oral testimony. EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc., 859 F.3d 1341, 1347–48 (Fed. Cir. 2017).

DuBose seeks summary judgment on four issues: (1) WP's '304 Patent is invalid under 35 U.S.C. § 103 because it is obvious; (2) WP is not entitled to recover lost profits; (3) DuBose's infringement was not willful; and (4) WP's '304 Patent, even if valid, is unenforceable because of WP's inequitable conduct. See [D.E. 50] 5. WP also seeks summary judgment on five defenses of DuBose: (1) WP's '304 Patent is invalid because of publicly available prior art; (2) WP's '304 Patent is invalid due to derivation; (3) WP's '304 Patent is invalid because Clarke was not the sole inventor; (4) WP's '304 Patent is invalid for failing to satisfy statutory requirements under 35 U.S.C. § 112 (written description, best mode, enablement, and definiteness); and (5) WP's '304 Patent, even if valid, is unenforceable because of WP's inequitable conduct. See [D.E. 98] 8.

Clarke filed the '304 Patent before the America Invents Act's ("AIA") implementation date. Thus, the court applies pre-AIA law. See Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2125 n.1 (2014); Allergan, Inc. v. Sandoz Inc., 796 F.3d 1293, 1298 n.2 (Fed. Cir. 2015); DeLorme Publ'g Co. v. BriarTek IP, Inc., 60 F. Supp. 3d 652, 662 n.4 (E.D. Va. 2014), aff'd, 622 F. App'x 912 (Fed. Cir. 2015) (unpublished).

## A.

Both parties seek summary judgment on issues concerning the '304 Patent's validity. As for DuBose's obviousness claim, to be patentable, an invention must be non-obvious. "A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2006); see KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007); Graham v. John Deere Co., 383 U.S. 1, 14–15 (1966). Obviousness is a question of law that focuses on the following factual considerations: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) other secondary factual considerations including commercial success and the presence of a longstanding but unsolved problem. See Graham, 383 U.S. at 17–18.

No rigid test for obviousness exits. See KSR, 550 U.S. at 415. Rather, a court considers whether "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention" and whether "the skilled artisan would have had a reasonable expectation of success in doing so." Procter & Gamble Co. v. Teva Pharm. USA, Inc., 566 F.3d 989, 994 (Fed. Cir. 2009); see Edge-Works Mfg. Co. v. HSG, LLC, 285 F. Supp. 3d 883, 897–98 (E.D.N.C. 2018).

DuBose argues that the '304 Patent is obvious because the design is simple and prior art is not significantly different than the design. See [D.E. 50] 12. The '304 Patent discloses a design

involving "two plies that face each other clingingly engaged with a mesh inside that restricts the stretchability of the material." [D.E. 50] 11 (alteration omitted). DuBose discloses numerous examples of prior art that, it alleges, make the '304 Patent obvious. See [D.E. 50] 13–16.

Viewing the record in the light most favorable to WP, genuine issues of material fact exist concerning obviousness. Thus, the court denies DuBose's motion for summary judgment concerning obviousness. See RMH Tech LLC v. PMC Indus., Inc., No. 3:18-CV-543, 2018 WL 3733954, at *15–16 (D. Conn. Aug. 6, 2018) (unpublished).

B.

A patent should not be granted "whose effects are to remove existent knowledge from the public domain." Graham, 383 U.S. at 6. Section 102, in part, is designed to prevent the issuance of patents because of prior art—"knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in an art. Society, speaking through Congress and the courts, has said 'thou shalt not take it away.'" Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1453–54 (Fed. Cir. 1984). Prior art includes (1) inventions that were known or used by others in the country, (2) inventions that were patented or sold for public use more than one year before a patent application was filed, and (3) inventions that "are either public or will likely become public [because] they have not been abandoned, suppressed, or concealed." OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1402 (Fed. Cir. 1997); see 35 U.S.C. §§ 102(a), (b), (g) (2006).

WP argues that the Shirrell prototype, designed and built in 2003, is not prior art. See [D.E. 98] 8. Genuine issues of material fact exist concerning whether the Shirrell prototype is the same as the 5G product that was "on sale," thereby qualifying as prior art under section 102(b), or whether the Shirrell prototype was known by others, thereby qualifying as prior art under section 102(a). As for section 102(b), WP alleges that DuBose will not be able to prove that Shirrell's prototype was on sale because Kellermann (and interested witnesses) offered the only evidence showing that it was on sale. See [D.E. 98] 11–13. The court rejects the argument. Documentary evidence showing that

14

ITW sold a product called "5G" may corroborate Kellerman's testimony. There is a genuine dispute concerning the identity of that "5G" product. Accordingly, genuine issues of material fact exist, and the court denies WP's motion for summary judgment concerning prior art.

As for section 102(g) and abandonment, DuBose has not presented evidence in response to WP's motion for summary judgment concerning abandonment, and no genuine issue of material fact exist. Therefore, the court grants WP's motion for summary judgment concerning abandonment.

C.

As for WP's motion for summary judgment concerning derivation, a patent applicant is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f) (2006). A party asserting that the named inventor derived his invention from another's work must show "(1) prior conception of the invention by another and (2) communication of that conception to the patentee that is sufficient to enable him to construct and successfully operate the invention." Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1376 (Fed. Cir. 2004) (quotation and alteration omitted). Whether a patentee derived an invention from another is a question of fact, but whether there was a prior conception is a question of law. See Cumberland Pharms. Inc. v. Mylan Institutional LLC, 846 F.3d 1213, 1217 (Fed. Cir. 2017).

First, "[a] conception must encompass all limitations of the claimed invention." Id. at 1218. "Conception requires more than a general goal or research plan; it requires a definite and permanent, specific, settled idea, namely, the idea defined by the claim at issue." Id. (quotations omitted). Second, the communication must "enable one of ordinary skill in the art to make the patented invention." Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 1344 (Fed. Cir. 2003); see Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1578 (Fed. Cir. 1997).

DuBose argues that individuals from Globopro brought numerous samples of metal coil wrap to Clarke at WP in order to develop a product to compete with ITW. See [D.E. 110] 15–16. One of those samples allegedly included the Shirrell prototype. See id. DuBose also alleges that Clarke

15

had never invented anything for use in the metal coil wrapping field. See id.

Even construing the evidence in the light most favorable to DuBose, no reasonable jury could find that Clarke received the prototype before WP began working on Panacea. Moreover, although Shirrell did create the prototype at a WP facility, DuBose has not shown as a matter of law a prior conception or communication to Clarke. Thus, the court grants WP's motion for summary judgment concerning derivation.

### D.

As for WP's motion for summary judgment concerning improper inventorship, under section 102(f) of the pre-AIA patent code, a patent may be invalidated if "[the inventor] did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f) (2006); see In re VerHoef, 888 F.3d 1362, 1363 & n.1 (Fed. Cir. 2018). Section 102(f) "requires that a patent accurately name the correct inventors of a claimed invention." In re VerHoef, 888 F.3d at 1365. Failure to name all of the inventors of a claimed invention renders the patent invalid. See Pannu v. Iolab Corp., 155 F.3d 1344, 1350–51 (Fed. Cir. 1998). "Patent issuance creates a presumption that the named inventors are the true and only inventors." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998).

"Determining inventorship is nothing more than determining who conceived the subject matter at issue . . . ." In re VerHoef, 888 F.3d at 1365 (quotation and alteration omitted). Each of the joint inventors need not make the same type or amount of contribution to the invention to be considered inventors for the purpose of section 102(f). Ethicon, 135 F.3d at 1460. Instead, each joint inventor need only contribute to part of the process that results in the invention. Id. A putative joint inventor's own testimony, however, "cannot, standing alone, rise to the level of clear and convincing proof." Id. at 1461.

DuBose argues that three other individuals (Massis, Massis, and Nitsopoulos; collectively the "Globopro executives") should be considered actual inventors and should be listed on the '304

Patent. See [D.E. 110] 6. In support, DuBose cites deposition testimony from Kellermann and the Globopro executives. The Globopro executives testified that they came to Clarke with the idea for Panacea. See [D.E. 110] 19; [D.E. 99] ¶¶ 70–89.

The Globopro executives have no documentary evidence to corroborate their testimony. See [D.E. 99] ¶¶ 90–94. Moreover, the Globopro executives are interested witnesses because they contend that they should be considered inventors on the '304 Patent. See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc., 322 F.3d 1335, 1350 (Fed. Cir. 2003). Furthermore, DuBose presents insufficient evidence to corroborate the testimony of the Globopro executives and has not created a genuine issue of material fact. Even viewing the record in the light most favorable to DuBose, the court grants WP's motion for summary judgment concerning improper inventorship.

## E.

WP seeks summary judgment on DuBose's invalidity contentions under 35 U.S.C. § 112: written description, best mode, enablement, and indefiniteness.

## 1.

As for WP's motion for summary judgment concerning written description, a patent "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . ." 35 U.S.C. § 112 (2006); see Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731 (2002). Whether a patent complies with the written description requirement is a question of fact determined as of the time of filing. See Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351, 1355 (Fed. Cir. 2010) (en banc). A patent may be invalid for failing the written description requirement on its face. See Univ. of Rochester v. G.D. Searle & Co., 358 F.3d 916, 927 (Fed. Cir. 2004) ("[A] patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification.").

The written description must "clearly allow persons of ordinary skill in the art to recognize

17

that the inventor invented what is claimed." Ariad Pharm., 598 F.3d at 1351 (quotation and alteration omitted). The inventor must demonstrate that he possessed the claimed invention. See id. "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." Id. The written description requirement ensures "that the scope of the right to exclude . . . does not overreach the scope of the inventor's contribution to the field . . . ." Id. at 1353–54 (quotation omitted).

DuBose argues that the claim element "stretching properties that limit stretching of the wrap" fails the written description requirement. See [D.E. 100-8] 13–14. As construed by this court, the claim element means "the stretchability of the ribs is less than the stretchability of the films in the multi-layer wrap, which assists in maintaining the puncture, tear, and/or abrasion resistance of the multi-layer wrap." [D.E. 42]. DuBose argues that nothing in the patent mentions puncture resistance, tear resistance, or abrasion resistance, and nothing in the patent links stretchability of ribs to those properties. [D.E. 100-8] 14. In support, DuBose notes that Dr. Kimmel suggested that reasonable minds could disagree about the specificity of the term "stretching properties." [D.E. 110] 27. Furthermore, DuBose argues that the written description is vague because Clarke did not know how relatively stretchable the mesh layer should be when he filed the patent application. See [D.E. 110] 28–29.

Even viewing the evidence in the light most favorable to DuBose concerning the written description defense, WP is entitled to summary judgment. See Carrier Vibrating Equip., Inc. v. Gen. Kinematics Corp., No. 10-CV-5110, 2012 WL 4483805, at *3–6 (N.D. Ill. Sept. 27, 2012) (unpublished); Morris & Assocs., Inc. v. Cooling & Applied Tech., Inc., No. 5:09-CV-23-BR, 2011 WL 2580668, at *8–10 (E.D.N.C. June 29, 2011) (unpublished). Accordingly, the court grants WP's motion for summary judgment concerning the written description defense.

2.

As for WP's motion for summary judgment concerning best mode, WP argues that the best mode defense is no longer available. Although WP is correct concerning post-AIA claims, pre-AIA law governs this claim. Accordingly, the court denies WP's motion for summary judgment concerning the best mode defense.

3.

As for WP's motion for summary judgment concerning enablement, section 112 contains an enablement requirement for patent validity. "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . ." 35 U.S.C. § 112 (2006). The enablement requirement is a distinct requirement from the written description requirement. The enablement requirements prevents overbroad patents and ensures adequate disclosure. See MagSil Corp. v. Hitachi Glob. Storage Techs., Inc., 687 F.3d 1377, 1380–81 (Fed. Cir. 2012).

"To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." Id. at 1380 (quotation omitted). This factual inquiry includes considering the quantity of experimentation necessary, the amount of direction or guidance presented, the presence or absence of working examples in the patent, the nature of the invention, the state of the prior art, the relative skill of those in the art, the predictability or unpredictability of the art, and the breadth of the claims. See, e.g., Edwards Lifescis. AG v. CoreValve, Inc., 699 F.3d 1305, 1310 (Fed. Cir. 2012).

DuBose argues that the '304 Patent fails to teach a person of ordinary skill how to make a puncture, tear, and/or abrasion resistant multi-layer wrap. See [D.E. 100-8] 15. However, DuBose has presented little evidence on the enablement issue. No genuine issue remains for trial concerning enablement. Accordingly, the court grants WP's motion for summary judgment concerning

enablement.

4.

As for definiteness, section 112 contains a definiteness requirement for patent validity. "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (2006); see In re Maatita, 900 F.3d 1369, 1375 (Fed. Cir. 2018). Definiteness is a legal question with underlying factual determinations. See Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1343 (Fed. Cir. 2016). Definiteness is determined "from the perspective of someone skilled in the relevant art" at the time the patent was filed. Nautilus, 134 S. Ct. at 2128.

The definiteness requirement strikes a balance between the "inherent limitations of language" and the goal of affording clear notice in exchange for patent protection. See id. at 2128–29. In Nautilus, the Court articulated the standard as follows: "[Section 112] require[s] that a patent's claim, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Id. at 2129.

DuBose's argument focuses on the term "stretching properties." See [D.E. 110]. As construed in this case, the term refers to any product in which the inner mesh layer is less stretchable than the outer layers. See [D.E. 42]. As construed, the term provides reasonable certainty about the scope of the patent. Simply put, the term refers to an inner layer that restricts stretching. Thus, a person of ordinary skill in the art would reasonably understand what falls within the patent. Moreover, DuBose has not presented sufficient evidence to withstand WP's motion for summary judgment. Accordingly, the court grant's WP's motion for summary judgment concerning definiteness.

F.

As for DuBose's motion for summary judgment concerning the availability of lost profits damages, the patent holder must demonstrate that, but for the infringement, it would have earned the

20

additional profits. Both parties dispute whether non-infringing alternatives were available, which is one of the four Panduit requirements. WP has provided sufficient evidence concerning non-infringing alternatives to create a genuine issue of material fact. Accordingly, the court denies DuBose's motion for summary judgment concerning the availability of lost profits damages.

## G.

As for DuBose's motion for summary judgment concerning willful infringement, DuBose concedes that it infringed the '304 Patent. In assessing patent damages, a district court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284; see Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1931 (2016). The district court possesses discretion to assess "punitive" or "vindictive" sanctions in "egregious cases of culpable behavior." Halo, 136 S. Ct. at 1932. This standard modifies the former enhanced damages test of In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007), which required a showing of objective recklessness. A district court need not, however, impose enhanced damages even after a finding of intentional misconduct. See Halo, 136 S. Ct. at 1933 ("Section 284 allows district courts to punish the full range of culpable behavior. Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct.").

DuBose has stipulated that it infringed the '304 Patent. See [D.E. 66]. Nonetheless, genuine issues of material fact exist concerning whether DuBose willfully infringed the '304 Patent. See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC, 879 F.3d 1332, 1353 (Fed. Cir. 2018) ("[T]he entire willfulness determination is to be decided by the jury."). Morever, even if the jury finds that DuBose willfully infringed the '304 Patent, this court is not required to award enhanced damages. See Halo, 136 S. Ct. at 1933. Therefore, the court denies DuBose's motion for summary judgment concerning willful infringement. The court will resolve the issue of enhanced damages after the jury trial.

## H.

Both parties seek summary judgment concerning inequitable conduct. Inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent. See Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011). "To hold a patent unenforceable for inequitable conduct, a district court must find by clear and convincing evidence that a patent applicant breached its duty of candor and good faith to the United States Patent and Trademark Office . . . by failing to disclose material information, or submitting false material information, with an intent to deceive the PTO." Monsanto Co. v. Bayer Bioscience N.V., 514 F.3d 1229, 1233–34 (Fed. Cir. 2008); see Therasense, Inc., 649 F.3d at 1287. A claim of inequitable conduct has two elements: materiality and intent. See Therasense, Inc., 649 F.3d at 1287–88. "[T]he remedy for inequitable conduct is the 'atomic bomb' of patent law." Id. at 1288. Inequitable conduct renders the entire patent claim unenforceable. Id.

"Although it is not impermissible to grant summary judgment of inequitable conduct, [the Federal Circuit] urges caution in making an inequitable conduct determination at the summary judgment stage." M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335, 1340 (Fed. Cir. 2006) (quotation omitted); see Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1317 (Fed. Cir. 2006) ("[A] grant of summary judgment on the issue of inequitable conduct is permissible, but uncommon."). Neither party has shown that this is an exceptional case warranting summary judgment. Accordingly, the court denies both parties' motions for summary judgment concerning inequitable conduct.

## V.

In sum, the court GRANTS DuBose's motion to strike [D.E. 117], DENIES DuBose's motion in limine to exclude Schulte [D.E. 57], GRANTS Western Plastics's motion to strike the '714 Patent [D.E. 131], DENIES DuBose's motion for partial summary judgment [D.E. 49], and GRANTS in part and DENIES in part Western Plastics's motion for partial summary judgment

[D.E. 97]. In addition, the court GRANTS the parties' first stipulation [D.E. 66] and second stipulation [D.E. 126]. DuBose's motion in limine [D.E. 55] and Western Plastics's motion in limine [D.E. 61, 65] are deemed WITHDRAWN. Western Plastics's motion for extension of time is DENIED as moot [D.E. 63]. Western Plastics's motion in limine [D.E. 60] is incorporated in its motion for partial summary judgment, and the motion in limine is DENIED.

SO ORDERED. This _25_ day of September 2018.


JAMES C. DEVER III
Chief United States District Judge