IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-294-D

| | |
|---|---|
| WESTERN PLASTICS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUBOSE STRAPPING, INC., )<br>)<br>Defendant. ) | **ORDER** |

On July 2, 2015, Western Plastics, Inc. ("WP" or "plaintiff") filed this action against DuBose Strapping, Inc. ("DuBose" or "defendant") alleging patent infringement [D.E. 1]. The parties conducted extensive discovery and motions practice, during which WP conceded infringement of U.S. Patent No. 8,080,304 ("the '304 Patent"). See [D.E. 66]. On November 18, 2019, a jury trial began on four issues [D.E. 203]. On November 22, 2019, the jury returned a verdict in favor of WP on each issue [D.E. 219].

On December 5, 2019, WP moved for a permanent injunction [D.E. 224] and filed a memorandum in support [D.E. 225]. On January 3, 2020, DuBose responded in opposition [D.E. 249]. On January 17, 2020, WP replied [D.E. 253]. As explained below, the court grants the motion for a permanent injunction.

I.

As for the trial, issue one was, "Did plaintiff Western Plastics, Inc. prove by a preponderance of the evidence that defendant DuBose Strapping, Inc. willfully infringed U.S. Patent No. 8,080,304 ('the '304 Patent')?" [D.E. 219] 1. The jury answered, "Yes" to issue one. See id. Issue two was, "Did defendant DuBose Strapping, Inc. prove by clear and convincing evidence that one or more claims of the '304 Patent is invalid as 'anticipated,' or, in other words, not new?" Id. at 2. The jury

answered, "No" to issue two. See id. Issue three was, "Did defendant DuBose Strapping, Inc. prove by clear and convincing evidence that the differences between the subject matter of the claimed invention in the '304 Patent and the prior art are such that the subject matter of any of the following claims would have been obvious at the time the invention in the '304 Patent was made to persons having ordinary skill in the pertinent art?" Id. at 3. The jury answered, "No" to issue three. See id. Issue four was, "Did plaintiff Western Plastics, Inc. prove by a preponderance of the evidence that it is entitled to recover lost profits from defendant DuBose Strapping, Inc?" Id. The jury answered, "Yes" to issue four, and awarded $614,548.00 in lost profits damages to WP. See id.

"The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To receive a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc., 920 F.3d 777, 792 (Fed. Cir. 2019); see also Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007). "An injunction does not necessarily follow a determination that a patent has been infringed." Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1379 (Fed. Cir. 2008). As an equitable remedy, a permanent injunction "is not a remedy which issues as of course, or to restrain an act the injurious consequences of which are merely trifling." Nichia Corp. v. Everlight Ams, Inc., 855 F.3d 1328, 1341 (Fed. Cir. 2017) (quotations omitted). Yet "[h]istorically, 'courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases.'" Id. (quoting eBay Inc., 547 U.S. at 395 (Roberts, C.J., concurring)).

2

WP has demonstrated that it should receive a permanent injunction preventing DuBose from infringing WP's '304 Patent. See [D.E. 225-2]. As for irreparable injury, the potential further loss of WP's market position if left without an injunction constitutes irreparable harm. "Where two companies are in competition against one another, the patentee suffers the harm—<u>often irreparable</u>—of being forced to compete against products that incorporate and infringe its own patented inventions." Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) (emphasis added). Here, WP (with its Panacea Wrap product) and DuBose (with its FlexStretch product) compete against each other in the premium, reinforced coil wrap segment. See [D.E. 266] 46–47. The jury found that DuBose willfully infringed upon WP's '304 Patent. See [D.E. 219]. At trial WP articulated a lost market share damages theory and a lost profits damages theory. See [D.E. 266] 46–47, 150–51; [D.E. 262] 182–253 (Schulte testimony). The jury ultimately accepted a lost profits damages theory, but the lost market share—both past and potential—strongly supports finding irreparable harm. See Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1361–62 (Fed. Cir. 2008); Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 975–76 (Fed. Cir. 1996). That WP has not licensed the '304 Patent to a single third party, in an attempt to maintain market exclusivity, also supports this finding concerning lost market share. See [D.E. 225] 7; cf. Douglas Dynamics, 717 F.3d at 1345 ("[T]he evidence shows that [plaintiff seeking permanent injunction] had never licensed the infringed patents, and intentionally chose not to, so that it could maintain market exclusivity.").

In opposition, DuBose argues that it has stopped selling the infringing Flex Stretch product and now sells a differentiated <u>Adhesive</u> Flex Stretch product. Thus, according to DuBose, WP cannot suffer irreparable harm. See [D.E. 249] 6–8. DuBose, however, previously represented that it stopped selling the infringing Flex Stretch product by September 2017, yet DuBose's December 2018 sale reports shows otherwise. See Trial Ex. 68. Moreover, the court cannot ignore that "[t]he heart of the patent grant is the right to exclude." ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1341 (Fed. Cir. 2012). Concomitantly, the right exclude includes a remedy for

3

past wrongs (damages at trial) and a remedy to prevent future ones (a permanent injunction). See Edwards Lifesciences AG v. CoreValve, Inc., 699 F.3d 1305, 1314 (Fed. Cir. 2012). WP has demonstrated that if WP cannot ensure the exclusion of DuBose from its property in the '304 Patent via a permanent injunction, it will suffer irreparable harm.

As for monetary relief and other remedies at law, WP has shown that such relief is inadequate for at least three reasons. First, loss of market share helps to demonstrate inadequacy of monetary relief. "The inherent difficulty of quantifying 'loss of market share, brand recognition, and customer goodwill' and of estimating monetary damages indicates that 'remedies at law are inadequate.'" TEK Glob., 920 F.3d at 792 (emphasis added) (quoting i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 862 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011)). As discussed, WP and DuBose are direct competitors, and the court credits WP's evidence concerning lost market share and the inherent difficulty to calculate such loss. See Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., 821 F. Supp. 2d 681, 694 (D.N.J. 2011), aff'd and remanded sub nom., Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA, 748 F.3d 1354 (Fed. Cir. 2014); see Crane Sec. Techs., Inc. v. Rolling Optics AB, 337 F. Supp. 3d 48, 60 (D. Mass. 2018), aff'd, 784 F. App'x 782 (Fed. Cir. 2019) (unpublished). Second, Thomas Clarke, WP's President, testified at trial concerning how steel mills test coil wrap products before switching from an old to a new product. See [D.E. 261] 66–67. By infringing, DuBose prevented WP from gaining this business, and perhaps even future business—particularly because "steel mills tend to make long term purchase decisions based on these trials." [D.E. 225] 11; see Invista N. Am. S.A.R.L. v. M & G USA Corp., 35 F. Supp. 3d 583, 610–11 (D. Del. 2014). Although difficult to quantity, these sort of lost business opportunities can "provide a basis for concluding that monetary relief would be inadequate." ActiveVideo, 694 F.3d at 1340. Third, DuBose's future infringement is entirely possible because past performance can indicate future results in patent cases. See Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1155 (Fed. Cir. 2011) ("There is no reason to believe that [the infringing party] will stop infringing,

4

or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction."); Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir.1994) (noting that "future infringement... may have market effects never fully compensable in money"). Accordingly, the court agrees that monetary relief cannot provide complete relief to WP.

As for the balance of the hardships, this factor tips in favor of WP receiving a permanent injunction. "[T]he 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties." i4i Ltd., 598 F.3d at 862. Initially, the court rejects DuBose's assertion that "[t]he only risk of harm to either party is risk of harm to [DuBose] — that [WP] will try to use an overly broad injunction to create legal mischief and a second major litigation using the injunction." [D.E. 249] 13. If any party caused mischief, DuBose did so by willfully infringing. Moreover, although DuBose's continued infringement is a closer question, this much is clear: WP will suffer harm if DuBose infringes again, losing market share, diluting its market exclusivity, and threatening the investment of "significant time, effort, and expense." [D.E. 225] 11. In particular, WP stands to suffer more than DuBose stands to gain when balancing the hardships because Panacea is a main product offering for WP (and arguably the gold standard in the market) while FlexStretch only accounts for a small amount of DuBose's revenue. Compare [D.E. 261] 56–57 with [D.E. 263] 4–5. Finally, DuBose's willful infringement also tilts the balance of the hardships towards WP and away from DuBose. Cf. Canon, Inc. v. Color Imaging, Inc., 292 F. Supp. 3d 1339, 1353 (N.D. Ga. 2018). Accordingly, the balance of the hardships favors WP and not DuBose.

As for the public interest, issuing a permanent injunction serves the public interest. "[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." i4i Ltd., 598 F.3d at 863. Enforcing that right to exclude inherently serves the public interest. See ActiveVideo, 694 F.3d at 1341. Although competition is healthy, "the public generally does not benefit when that competition comes at the expense of a patentee's

5

investment-backed property right." Apple Inc. v. Samsung Elecs. Co., 809 F.3d 633, 647 (Fed. Cir. 2015). Thus, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." Id. No such countervailing factors exist here. WP has the right to protect its patent and that protection serves the public interest. Accordingly, this factor favors WP.

Finally, the court addresses the scope of the permanent injunction. WP asks the court to use the following injunctive language:

> Pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65, the Court ORDERS that Defendant DuBose Strapping, Inc. ("DuBose"), its parents, subsidiaries, successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with DuBose who have actual notice of this Order, are hereby permanently enjoined and prohibited from engaging in future acts of infringement of Western Plastics' U.S. Patent No. 8,080,304 ("the '304 Patent") by making, using, offering for sale, selling, or importing products that infringe one or more claims of the '304 Patent in the United States, including <u>DuBose's FlexStretch products comprising a rib layer laminated between two clingingly engaged films ("the Adjudicated Products") and any other product that is not more than colorably different from the Adjudicated Products.</u>
>
> This injunction shall expire upon the abandonment, invalidation, or expiration of the claims of the '304 Patent.

[D.E. 225-2] 2 (emphasis added). This language tracks the admonition that "the only acts the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." Int'l Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed. Cir. 2004). Thus, the court declines DuBose's invitation to limit the injunction's scope solely to "adjudicated products," and rejects DuBose's assertions that WP "argues for an injunction that is broad enough to cover the Adhesive FlexStretch Product" and that "[s]uch an injunction would indisputably cover the very prior art that [WP] told the USPTO was different from Mr. Clarke's alleged invention." [D.E. 249] 4. Accordingly, the court adopts WP's proposed injunctive language.

II.

In sum, the court GRANTS WP's motion for a permanent injunction [D.E. 224]. Defendant DuBose Strapping, Inc., its parents, subsidiaries, successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with DuBose Strapping, Inc., who have actual notice of this Order, are PERMANENTLY ENJOINED and prohibited from engaging in future acts of infringement of Western Plastics' U.S. Patent No. 8,080,304 ("the '304 Patent") by making, using, offering for sale, selling, or importing products that infringe one or more claims of the '304 Patent in the United States, including DuBose's FlexStretch products comprising a rib layer laminated between two clingingly engaged films ("the Adjudicated Products") and any other product that is not more than colorably different from the Adjudicated Products. This injunction shall expire upon the abandonment, invalidation, or expiration of the claims of the '304 Patent.

SO ORDERED. This 24 day of September 2020.

JAMES C. DEVER III
United States District Judge