IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-294-D

WESTERN PLASTICS, INC., )
)
Plaintiff, )
)
v. ) ORDER
)
DUBOSE STRAPPING, INC., )
)
Defendant. )

On July 2, 2015, Western Plastics, Inc. ("WP" or "plaintiff") filed this action against DuBose Strapping, Inc. ("DuBose" or "defendant") alleging patent infringement [D.E. 1]. The parties conducted extensive discovery and motions practice, during which WP conceded infringement of U.S. Patent No. 8,080,304 ("the '304 Patent"). See [D.E. 66] 1–2. On November 18, 2019, a jury trial began on four issues [D.E. 203]. On November 22, 2019, the jury returned a verdict in favor of WP on each issue [D.E. 219].

On December 6, 2019, WP moved for an award of treble damages [D.E. 233] and filed a memorandum in support [D.E. 234]. On January 3, 2020, DuBose responded in opposition [D.E. 248]. On January 17, 2020, WP replied [D.E. 254].[1] As explained below, the court grants WP's motion for a treble damage award and awards $1,843,644.00 in treble damages.

I.

As for the trial, issue one was, "Did plaintiff Western Plastics, Inc. prove by a preponderance of the evidence that defendant DuBose Strapping, Inc. willfully infringed U.S. Patent No. 8,080,304

---

[1] DuBose's response and WP's reply also addressed WP's motion for attorneys' fees [D.E. 229].

("the '304 Patent')?" [D.E. 219] 1. The jury answered, "Yes" to issue one. See id. Issue two was, "Did defendant DuBose Strapping, Inc. prove by clear and convincing evidence that one or more claims of the '304 Patent is invalid as 'anticipated,' or, in other words, not new?" Id. at 2. The jury answered, "No" to issue two. See id. Issue three was, "Did defendant DuBose Strapping, Inc. prove by clear and convincing evidence that the differences between the subject matter of the claimed invention in the '304 Patent and the prior art are such that the subject matter of any of the following claims would have been obvious at the time the invention in the '304 Patent was made to persons having ordinary skill in the pertinent art?" Id. at 3. The jury answered, "No" to issue three. See id. Issue four was, "Did plaintiff Western Plastics, Inc. prove by a preponderance of the evidence that it is entitled to recover lost profits from defendant DuBose Strapping, Inc?" Id. The jury answered, "Yes" to issue four, and awarded $614,548.00 in lost profits damages to WP. See id.

Under 35 U.S.C. § 284, "the court may increase the damages up to three times the amount found or assessed" in patent infringement cases. 35 U.S.C. § 284 (emphasis added). "Enhanced damages are as old as U.S. patent law." Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S. Ct. 1923, 1928 (2016). The court has discretion to award treble damages, but such discretion is not without limit. See id. at 1931–32; cf. Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005). Specifically, "[a]wards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." Halo, 136 S. Ct. at 1932. The Supreme Court has stressed that treble damages "are generally reserved for egregious cases of culpable behavior[,]" and that "such punishment should generally be reserved for egregious cases typified by willful misconduct." Id. at 1932, 1934. "But an award of enhanced damages does not necessarily flow from a willfulness finding." Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 875 F.3d 1369, 1382 (Fed. Cir. 2017).

2

The court awards treble damages to WP on the basis of both the jury's willfulness finding and the court's own analysis of the particular circumstances of this case. As for the willfulness finding, the court instructed the jury as follows:

> To show that defendant DuBose Strapping's infringement was willful, plaintiff Western Plastics must prove by a preponderance of the evidence that defendant DuBose Strapping knew of plaintiff Western Plastics' patent and intentionally infringed at least one asserted claim of the patent. For example, you may consider whether defendant DuBose Strapping's behavior was <u>malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith</u>.

[D.E. 218] 23 (emphasis added). This instruction almost exactly tracks Halo's survey of the language used to describe behavior meriting enhanced damage awards: "The sort of conduct warranting enhanced damages has been variously described in our cases as <u>willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant</u>, or—indeed—characteristic of a pirate." Halo, 136 S. Ct. at 1932. Under Halo, the "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Id. at 1933; see WesternGeco L.L.C. v. ION Geophysical Corp., 837 F.3d 1358, 1362 (Fed. Cir. 2016), rev'd sub nom., WesternGeco LLC v. ION Geophysical Corp., 138 S. Ct. 2129 (2018), reinstated in part, 913 F.3d 1067 (Fed. Cir. 2019).[2]

The court has also "consider[ed] the particular circumstances of the case" and determines that DuBose's behavior is egregious enough to award treble damages. Presidio Components, 875 F.3d at 1383; see also Halo, 136 S. Ct. at 1932; WesternGeco, 837 F.3d at 1362. To summarize a complex case as simply as possible, DuBose basically copied WP's Panacea product even though DuBose knew it was not in a safe harbor in doing so. Cf. Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1414 (Fed. Cir. 1996) ("We have found no authority in our precedent for the

---

[2] The court has not considered the factors from Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992), abrogated in part on other grounds by Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). "When the Supreme Court articulated the current controlling test for decisions to award enhanced damages, it did not require the Read factors as part of the analysis." Presidio Components, 875 F.3d at 1382.

3

proposition that the fact finder must find 'slavish copying' in order to conclude that the infringer copied the patentee's invention."). Jeffery Kellerman, DuBose's Chief Operating Officer (and former President of ITW-Signode, a primary distributor of Panacea from 2009 to 2011), knew that WP held the '304 Patent covering the Panacea product. See [D.E. 262] 43–49. Initially, Kellerman sought legal advice from Frank Leak on "design-around opportunities" (i.e. how to avoid infringing upon WP's '304 patent) for DuBose's own product line, FlexStretch. See Trial. Ex. 8; [D.E. 262] 43–49, 99–103. In Kellerman's retelling, the upshot of Leak's Opinion Letter was: "[I]f I sell the same product that I made, invented and showed and disclosed to my patent and showed to the customer, I can take and do that." [D.E. 262] 108. That "same product" Kellerman refers to—and that DuBose relied on as "prior art" in an attempt to invalidate the '304 Patent— is Jack Shirell's 2003 prototype, which stemmed from Shirrell's own '909 Patent. See Trial Ex. 12; [D.E. 262] 97–98. But Leak's Opinion Letter was at best inconclusive to Kellerman's prior art position, and at worst, contradictory. See Trial Ex. 12 /3, 12/8 n.1, 12/9, 12/10 (noting the need for "more information" and to "further investigate"). In other words, Kellerman's supposed interpretation of such advice was wrong (as the jury implicitly found). Moreover, Leak's follow-up emails confirm the court's conclusion concerning the weakness of Kellerman's position. See, e.g., Trial Ex. 16/1–2 (noting, inter alia, that Shirell's '909 patent would be of "limited use from an invalidity standpoint" because the Patent Examiner had considered and rejected it as invalidating the '304 Patent (emphasis omitted)). Leak's testimony at trial also undermined Kellerman's position. See, e.g., [D.E. 263] 127–132 (Leak answered "Correct" when asked "[N]ever in your engagement with DuBose did you ever conclude that that [Shirell] prototype constituted prior art?").[3]

Kellerman's reliance on the legal advice of a second lawyer, Joel Bair, fares no better. On April 15, 2015, legal counsel for Thomas Clarke, President of WP and named inventor of the '304

---

[3] In fact, Kellerman seemed to ignore Leak's legal advice on how to avoid infringement. See Trial Exs. 16/2, 17/4.

4

Patent, sent a letter to Kellerman and DuBose asking DuBose to respect WP's '304 Patent. See Trial Ex. 4; [D.E. 261] 6. Kellerman sought Bair's legal advice concerning DuBose's potential legal liability. See Trial Ex. 40. Bair eventually instructed Kellerman that:

> In our view, the Dubose Strapping product cannot be held to infringe any of the claims of the Clarke '304 patent because it is squarely within the prior art, including the disclosure of Shirrell [i.e., the '909 Patent]. Whatever the scope of the Clarke '304 patent claims, if any, they cannot read on the Dubose Strapping product without being invalid in view of Shirrell.

Trial. Ex. 43/2. The upshot of Bair's advice, as DuBose's counsel aptly noted in his closing argument, was, "You do what is in the Shirrell '909 patent, it's safe." [D.E. 266] 101–02. But Kellerman and Dubose did not do what was in the Shirrell '909 Patent. Instead, every iteration of DuBose's FlexStretch contained "ribs restricting stretching" like the '304 Patent and not "mesh . . . [that] did not restrict or limit stretching" like the '909 Patent. Tr. Ex. 43/1. Put simply, the legal advice that Kellerman received—from not one but two lawyers—did not offer a "safe harbor" from the '304 Patent but a "warning sign" to avoid it. DuBose ignored those warning signs in order to make money selling an infringing product. Having reviewed the jury's finding, the entire record, and the governing law, DuBose's conduct warrants treble damages.

II.

In sum, the court GRANTS WP's motion for treble damages [D.E. 233]. The court trebles the jury's damage award from $614,548.00 to $1,843,644.00.

SO ORDERED. This 24 day of September 2020.

JAMES C. DEVER III
United States District Judge